United States District Court
Southern District of Texas
**ENTERED**
November 22, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| HEATHER L. BENNETT as Next Friend of CARTER JAMES BENNETT, | § § § § | |
| Plaintiff. | § § | |
| VS. | § § | CIVIL ACTION NO. 3:19-CV-00064 |
| ANDREW SAUL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | § § § § § | |
| Defendant. | § § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Heather Bennett ("Bennett") seeks judicial review of an administrative decision denying her grandson, Carter Bennett ("Carter"), disability benefits under Title XVI of the Social Security Act (the "Act"). *See* 42 U.S.C. § 1381 *et seq*.

Before me are competing motions for summary judgment filed by Bennett and Defendant Andrew Saul, the Acting Commissioner of the Social Security Administration (the "Commissioner"). *See* Dkts. 10, 11. Having considered the motions, responsive briefing, record, and applicable law, I **RECOMMEND** that Plaintiff's Motion for Summary Judgment (Dkt. 10) be **GRANTED**, Defendant's Motion for Summary Judgment (Dkt. 11) be **DENIED**, and this case be **REMANDED** for reconsideration in accordance with this opinion and applicable law.

## BACKGROUND

Carter was born on April 24, 2004, making him 15-years-old today. In 2011, the Social Security Administration determined that Carter was disabled and entitled to supplemental security income disability benefits. In 2015, the Social Security Administration conducted a continuing disability review of Carter's claim. After a hearing, an Administrative Law Judge ("ALJ") found that Carter was no longer disabled. Bennett filed an appeal with the Appeals Council. The Appeals Council affirmed the ALJ's decision. This appeal followed.

## APPLICABLE LAW

### A. STANDARD OF JUDICIAL REVIEW

The ALJ's decision to deny social security benefits is reviewed by the federal courts to determine whether (1) the ALJ applied the proper legal standard, and (2) the ALJ's factual findings are supported by substantial evidence. *See Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance." *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987). "If the [ALJ's] findings are supported by substantial evidence, they must be affirmed." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).

The ALJ's decision must stand or fall with the reasons stated in the ALJ's final decision. *See Newton*, 209 F.3d at 455. *Post hoc* rationalizations for an agency decision

are not to be considered by a reviewing court. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). "The reviewing court may not reweigh the evidence, try the questions *de novo*, or substitute its judgment for the [ALJ's], even if it believes the evidence weighs against the [ALJ's] decision. Conflicts in the evidence are for the [ALJ], not the courts, to resolve." *Pennington v. Comm'r of Soc. Sec. Admin.*, No. 3:16-CV-230, 2017 WL 4351756, at *1 (S.D. Tex. Sept. 29, 2017).

**B.     LEGAL FRAMEWORK FOR CHILDHOOD DISABILITY DETERMINATION**

There is a statutory requirement that if a child is eligible for disability benefits, the child's continued eligibility for such benefits must be reviewed periodically. *See* 42 U.S.C. § 421(i)(1); 20 C.F.R. § 416.994a(a). To terminate Carter's disability benefits as a part of this periodic review, the ALJ must find: (1) "there has been medical improvement in [Carter's] impairment(s);" and (2) Carter is "not currently disabled." 20 C.F.R. § 416.994a(a)(1). "Medical improvement is any decrease in the medical severity of [Carter's] impairment(s) which was present at the time of the most recent favorable decision that [Carter was] disabled." 20 C.F.R. § 416.994a(c). When evaluating the medical severity of Carter's impairments, the ALJ is required to assess his limitations in each of the following six functioning domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being.[1] 20 C.F.R. § 416.926a(b)(1). A limitation in a domain is "marked" when "your

---

[1] The only domains of functioning at issue in this case are: (1) acquiring and using information; (2) attending and completing tasks; and (3) interacting and relating with others.

3

impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation "is 'more than moderate' but 'less than extreme.'" *Id.* A limitation in a domain is "extreme" when "your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). Once the level of severity of the child's limitation is determined in each of the six domains, it is compared to the level of severity determined in the initial disability evaluation. *See* 20 C.F.R. § 416.994a(c). The difference between the initial determination and the subsequent determination illuminates whether there has been a medical improvement. *See id*.

If there is no medical improvement, the analysis is over and the child is still disabled for purposes of securing disability benefits. *See* 20 C.F.R. § 416.994a(b)(1). If the ALJ determines that there has been a medical improvement, the next step in the analysis is to determine whether the child is still currently disabled, under the same domain analysis, despite the medical improvement. *See* 20 C.F.R. § 416.994a(b)(3). An impairment is disabling if it results in "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d).

## THE ALJ'S FINDINGS

The ALJ found that Carter suffers from severe impairments—Attention Hyperactive Deficit Disorder ("ADHD") and Asperger's Syndrome. The ALJ found that Carter has less than marked limitations in acquiring and using information, attending and completing tasks, and interacting and relating with others. The ALJ concluded that there was medical improvement in Carter's condition and Carter was no longer disabled.

**DISCUSSION**

The parties raise only one issue on appeal: whether the ALJ failed to properly weigh the opinion of Carter's treating psychiatrist, Dr. Alice Mao ("Dr. Mao"), as expressed in her Childhood Disability Domain Analysis ("Domain Analysis"). Bennett argues that the ALJ erred when she afforded "little weight" to Dr. Mao's Domain Analysis, and that if Dr. Mao's opinion was given substantial weight as the law requires, the ALJ would have found Carter disabled. The Commissioner argues that the ALJ properly gave little weight to Dr. Mao's Domain Analysis because it is inconsistent with her treatment notes and the record as a whole.

**A.  THE WEIGHT GIVEN TO TREATING PHYSICIAN, DR. MAO**

The Code of Federal Regulations (the "Code") creates a broad framework for ALJs to follow in evaluating medical opinions in social security disability cases. *See* 20 C.F.R. § 404.1527. A treating physician is an "acceptable medical source who provides [a claimant], or has provided [a claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." 20 C.F.R. § 404.1527(a)(2). The treating physician rule provides that the opinion of a claimant's treating physician is entitled to great weight. *See Newton*, 209 F.3d at 455. Indeed, "[a] treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence.'" *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)). The "standard of deference to the examining physician is contingent upon

the physician's ordinarily greater familiarity with the claimant's injuries." *Rodriguez v. Shalala*, 35 F.3d 560, 1994 WL 499764, at *2 (5th Cir. 1994) (citing *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)).

An ALJ may reject a treating physician's opinion "when good cause exists. 'Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.'" *Giles v. Astrue*, 433 F. App'x 241, 246−47 (5th Cir. 2011) (quoting *Newton*, 209 F.3d at 455). If good cause exists, the treating physician's opinions are "not only not conclusive in these proceedings, but may be rejected when the evidence supports a contrary conclusion." *Johnson v. Astrue*, No. 4:11-CV-03652, 2013 WL 5785600, at *9 (S.D. Tex. Apr. 10, 2013) (quotation marks and citation omitted).

1. **The Domain Analysis**

   *a.     The ALJ's reasons for assigning Dr. Mao's Domain Analysis little weight*

Beginning in May 2016, Dr. Mao began holding sessions with Carter at roughly six-month intervals. On January 25, 2018, Dr. Mao completed the Domain Analysis. *See* Dkt. 7-16 at 23. In her Domain Analysis, Dr. Mao concluded that Carter has a marked limitation in acquiring and using information, a marked limitation in attending and completing tasks, and an extreme limitation in interacting and relating with others. She also noted, "Carter has had severe problems of concentration . . . [and] has made poor grades b/c of concentration and inability to focus." *Id*.

The ALJ considered Dr. Mao's Domain Analysis and found that it was entitled to "little weight." The ALJ explained:

> Although Dr. Mao is the claimant's treating psychiatrist, little weight is assigned to her opinion because it is inconsistent with her treatment notes and the record as a whole. Dr. Mao's treatment notes evidence the claimant's improved concentration and focus and good grades in school (As and Bs). Additionally, the record shows the claimant's teacher's [sic] do not report any extreme limitations in his ability to interact and relate to others and the claimant reported having friends at school.

Dkt. 7-3 at 24 (citation omitted).

  b. *Good cause did not exist to assign little weight to Dr. Mao's Domain Analysis*

Because I conclude that Dr. Mao's Domain Analysis is consistent with substantial evidence in the record, the ALJ did not have good cause to assign Dr. Mao's opinion little weight. The ALJ found that Dr. Mao's Domain Analysis was inconsistent with her treatment notes and the record because of the following facts: (1) the notes indicated improved concentration and focus and good grades in school (As and Bs); (2) Carter's teachers[2] did not report extreme limitations in Carter's ability to interact and relate with others; and (3) Carter reported having friends at school. However, I find that Dr. Mao's Domain Analysis is not inconsistent with these facts for the following reasons.

First, the ALJ did not consider the other evidence in Dr. Mao's treatment notes that is consistent with her Domain Analysis. For example, the ALJ does not discuss that Dr. Mao apparently increased the dosage of Carter's ADHD medication or her notations

---

[2] Carter attends Westview School for Autism. The school is highly structured, and the entire curriculum is developed and devoted to educating autistic children. Indeed, the school often maintains a two to one, student to instructor, ratio.

7

regarding Carter's need for, or possibly ongoing, psychotherapeutic, social skills training. *See* Dkt. 7-16 at 6, 10, 16, 20. In my view, these facts tend to strongly support Dr. Mao's Domain Analysis. The ALJ's failure to even address these facts is problematic because an "ALJ's findings of fact . . . are not conclusive when derived by ignoring evidence, misapplying the law or judging matters entrusted to experts." *Williams v. Berryhill*, No. 3:16-CV-900-CWR-RHW, 2018 WL 736259, at *1 (S.D. Miss. Feb. 6, 2018) (quoting *Jackson v. Comm'r of Soc. Sec.*, No. 2:11-CV-177-SAA, 2012 WL 1392340, at *3 (N.D. Miss. Apr. 20, 2012)). As explained by the Fifth Circuit, an "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

Second, the ALJ's reliance on Dr. Mao's notations of improved concentration and focus is also problematic because such statements do not in any way conflict with her Domain Analysis. To be clear, Dr. Mao's treatment notes from at least two visits indicate that Carter's "[a]ttention and focus has improved." Dkt. 7-16 at 7, 12. Noticeably absent in those treatment notes is any indication of the scale on which Carter's improvement was being measured. This immediately undermines the ALJ's ability to rely on such statements to demonstrate an inconsistency between Dr. Mao's treatment notes and Domain Analysis. To illustrate this point, consider this example:

> Assume that Dr. Mao's scale for measuring Carter's concentration and focus ranges from level one to 100, with level 100 representing a "normal" rating in each respective category. Also assume that on Carter's first visit to Dr. Mao, she found that his concentration and focus were level 1. If on Carter's next visit, Dr. Mao found that his concentration and focus was suddenly level 2, Dr. Mao could accurately write in her notes that Carter's "concentration and focus has improved" or "concentration and focus has doubled." Both of

8

> those statements would be accurate, and neither would reveal to a third party that Carter was in fact 98 levels below "normal."

This example makes plain that qualitive descriptions, such as those relied upon by the ALJ in this case, are of limited value when divorced from the person who used the description. In my view, the descriptions in this case amount to nothing more than a mere crumb of information, meaning the ALJ improperly applied her own speculative inferences to the crumbs to see an inconsistency where there was none. This was error. When someone has a severe condition, the mere mention of an improvement in the condition does not at all lend credence to the conclusion that the condition is no longer severe.[3] Dr. Mao was in a much better position to determine whether the improvement in Carter's concentration and focus was so great that Carter was no longer seriously limited in the domain. *See Rodriguez*, 1994 WL 499764, at *2 (explaining that the ALJ should generally defer to the treating physician's opinion because the treating physician, not the ALJ, has the expertise in the relevant field and is generally in the best position to evaluate the issue). Dr. Mao came to the opposite conclusion, and the ALJ should have deferred to her judgment.

Third, the supposed inconsistency related to Carter's grades is also problematic. In my review of Dr. Mao's treatment notes, Carter's grades were referenced only once during just one of his many visits. Although Carter may have been making As and Bs at one time, his average performance in school over time may have been much worse. The record supports this possibility. Both Dr. Mao and Carter's grandmother reported that Carter was

---

[3] This is especially true considering the cyclical nature of Carter's condition, which I address below, because intermittent periods of improvement would be expected.

9

having trouble in school. In other words, the mere fact that Carter reported making As and Bs during one visit does not by itself reveal any inconsistency with the Domain Analysis.[4]

Next, the ALJ's assertion that Carter's "teacher's [sic] do not report any extreme limitations in his ability to interact and relate to others" mischaracterizes the record and does not actually identify any inconsistency with Dr. Mao's Domain Analysis. Dkt. 7-3 at 24 (citation omitted). In making this assertion, the ALJ cites to two teacher questionnaires, one of which was jointly completed by Carter's math teachers, Cody Sciba and Ann Floyd (the "Teacher Questionnaire"). *See* Dkt. 7-7 at 90–97. The Teacher Questionnaire indicates that Carter has problems in eight out of thirteen different categories listed within the "interacting and relating with others" domain. *See id.* at 93. To be certain, the Teacher Questionnaire does not directly opine on whether any of Carter's limitations qualify as "extreme" as defined by the Code. *See* 20 C.F.R. § 416.926a(e)(3). Indeed, many courts have repeatedly explained that the various descriptions used in teacher questionnaires do not have a one-to-one relationship with the various limitation descriptions defined in the Code. *See White o/b/o T.R.W. v. Berryhill*, No. 17-CV-6367P, 2019 WL 1367382, at *5 (W.D.N.Y. Mar. 26, 2019) (collecting cases). This is why courts have found that even when "teachers assessed [a claimant] with 'serious' and 'very serious' problems in [a] domain," such "assessments are not necessarily inconsistent with [an] ALJ's conclusion that [a claimant's] limitations were 'less than marked.'" *Id.* If this is true when comparing

---

[4] Given that Carter attended a specialized school for autistic children, it's unclear whether good grades in such a school alone is sufficient to contradict the medical opinion of the treating physician.

10

a teacher questionnaire to an ALJ's conclusion, it must also be true when comparing a teacher questionnaire to the opinion of a treating physician.[5] All of this means that contrary to the ALJ's assertion, the Teacher Questionnaire cannot directly report any "extreme" limitations under the Code. At most, the Teacher Questionnaire can report facts that the ALJ can use to make her ultimate limitation conclusion. Therefore, if an inconsistency exists in this case, it's not an inconsistency between the Teacher Questionnaire and Dr. Mao's medical opinion, it's an inconsistency between *the ALJ's assessment of* the Teacher Questionnaire and Dr. Mao's opinion. Of course, this calls into question the ALJ's assessment of the Teacher Questionnaire.

In my view, the ALJ's assessment of the Teacher Questionnaire did not comply with controlling law. "The Commissioner's regulations require the ALJ to consider the effects of a structured or highly supportive setting on the claimant's functioning and, if the claimant's symptoms or signs are controlled or reduced by the structured environment, the ALJ is required to consider the claimant's functioning outside of the highly structured setting." *Stanley v. Comm'r of Soc. Sec.*, 32 F. Supp. 3d 382, 394 (N.D.N.Y. 2014) (internal

---

[5] In this case, it is clear that the Teacher Questionnaire may reasonably be interpreted in a manner consistent with Dr. Mao's opinion. As described above, Sciba and Floyd indicated that Carter has numerous problems in the relevant domain. However, they never attempted to describe whether the cumulative effect of having problems in eight different categories within a domain could reasonably result in an extreme limitation in the encompassing domain. *See* 20 C.F.R. 416.926a(c). Moreover, in addition to the various problems mentioned above, Sciba and Floyd wrote that Carter "requires *frequent prompting and modeling* of appropriate interactions with teachers and peers." Dkt. 7-7 at 93 (emphasis added). Obviously, if Carter's teachers have to *prompt* and model appropriate interactions *on a frequent basis*, one could reasonably conclude that Carter's "impairment(s) interferes very seriously with [his] ability to *independently initiate*, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i) (emphasis added).

11

quotation marks, alteration, and citation omitted) (collecting authority). *See also* 20 C.F.R. § 416.924a(b)(5)(iv)(C).[6] As noted, Carter attends a highly structured school that exclusively educates autistic children. The ALJ's decision only mentions in passing that Carter attended such a school and certainly never attempts to analyze what effect, if any, this special educational setting had on the teachers' perception of the severity of Carter's condition. This, alone, is reason to remand this case. *See Bishop v. Colvin*, No. 7:13-CV-1059 MAD, 2015 WL 1414316, at *7 (N.D.N.Y. Mar. 27, 2015) (remanding where ALJ failed to consider that the claimant was receiving instruction in a highly structured, restrictive environment); *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 147 (N.D.N.Y. 2012) ("A finding of 'less than marked' is unsupported by substantial evidence when the ALJ fails to consider that the child's improvements in behavior occurred only in the structured special education setting."); *Williams ex rel. D.A.W. v. Astrue*, No. 08 CIV. 6375(LBS), 2009 WL 3754391, at *9 (S.D.N.Y. Nov. 5, 2009) (explaining that "[i]mprovement[s] based on a structured special education environment and the efforts of teachers and therapists is insufficient to support a finding that [Claimant's] functional limitations are not marked").

---

[6] Section 416.924a(b)(5)(iv)(C) of the Social Security Regulations provides that:

> A structured or supportive setting may minimize signs and symptoms of your impairment(s) and help to improve your functioning while you are in it, but your signs, symptoms, and functional limitations may worsen outside this type of setting. Therefore, we will consider your need for a structured setting and the degree of limitation in functioning you have or would have outside the structured setting. Even if you are able to function adequately in the structured or supportive setting, we must consider how you function in other settings and whether you would continue to function at an adequate level without the structured or supportive setting.

12

Lastly, the ALJ's reference to Carter's representation that he has friends at school does not reveal an inconsistency with the Domain Analysis. Given that Carter "requires *frequent prompting and modeling* of appropriate interactions with teachers and peers," it is unclear what Carter means when he says he has "friends." Dkt. 7-7 at 93 (emphasis added). He may not understand what it means to have a friend. And even if Carter does have friends at his school, Carter's ability to make friends with other autistic children that share similar limitations says little about his ability to interact and relate with others in general. Furthermore, Carter may have made his "friends" only as a direct result of the prompting and modeling of his special-needs teachers, not as a result of any improvement in his condition.

In sum, I find that the ALJ has not pointed to any medical evidence or any other substantial evidence in the record to justify assigning Dr. Mao's opinion little weight. Although the ALJ claimed that Dr. Mao's opinion is inconsistent with the record, a careful and thorough review of the entire record can reasonably be interpreted in a manner fully consistent with Dr. Mao's opinion. As a result, the ALJ's reasons for assigning Dr. Mao's opinion little weight do not constitute good cause.

    c.    *The Newton Factors Analysis*

In the absence of good cause, an ALJ is required to consider the *Newton* factors, outlined in 20 C.F.R. § 404.1527(c), before declining to give controlling weight to a treating physician's medical opinion. *See Aguilar v. Berryhill*, No. 5:16-CV-900-DAE, 2018 WL 1833246, at *5 (W.D. Tex. Mar. 22, 2018) ("[A]n ALJ may reject the opinion of a treating physician only if the ALJ performs a detailed analysis of the treating physician's

views under the criteria set forth in 20 C.F.R. § 404.1527[(c)], or when good cause is shown.") (internal quotation marks and citations omitted). Here, there is no indication that the ALJ undertook her obligation to fully consider each of the six *Newton* factors. I presume this is because the ALJ incorrectly believed she had demonstrated good cause. However, as described above, I have found that the ALJ failed to show good cause. Thus, the ALJ's failure to engage in a concise six factor analysis was error. *See Ramirez v. Berryhill*, No. 3:17-CV-00336, 2018 WL 3651389, at *9 (S.D. Tex. July 17, 2018) (explaining I am "not inclined to scour the ALJ's decision to try to cobble together a cogent six-factor analysis when it is not clear on the face of the decision."). Because the ALJ failed to apply each of the *Newton* factors, I find that the ALJ "did not apply the correct legal standard and [her] decision is not supported by substantial evidence." *Id*.

2. **Dr. Mao's statement submitted to the Appeals Council on August 3, 2018 ("Statement")**

As a part of his appeal with the Appeals Council, Carter submitted Dr. Mao's Statement. In her Statement, Dr. Mao explains:

> As with most patients with this diagnosis Carter goes through periods of improvement followed by periods of regression. Carter has currently failed the last two terms of math and has been experiencing a prolonged period of regression. Approximately four years ago Carter went through a period of improvement. His regressive period started approximately 18 months ago. During this regressive period, he has demonstrated a general unhappiness with life and dislike of people. He is sullen and withdrawn during examinations, providing little response to questions about his wellbeing. It is my opinion that Carter will require lifelong care for this diagnosis . . . Carter will continue to experience periods of improvement and regression throughout his life and may develop other disorders, as with the recent appearance of dysphoria.

14

Dkt. 7-3 at 12. In my review of the record, I encountered Dr. Mao's Statement, but neither party has presented any argument regarding this particular medical opinion. Accordingly, although I am not remanding based on the ALJ's consideration of Dr. Mao's Statement, I note on remand, the ALJ should take care to address the cyclical nature of Carter's impairments. In my view, the ALJ's current decision erroneously does not consider that the nature of Carter's condition would naturally lead to temporary improvements and corresponding remissions.[7] *See* 20 C.F.R. § 416.994a(c)(3).

### B. THE ALJ'S ERRORS WERE NOT HARMLESS

Although the ALJ erred by improperly weighing Dr. Mao's Domain Analysis, I must still consider whether the error was harmless. "In the Fifth Circuit, harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." *McNeal v. Colvin*, No. 3:11-CV-02612-BH-L, 2013 WL 1285472, at *27 (N.D. Tex. Mar. 28, 2013).

I find that the errors described above are material to the ALJ's ultimate finding of no disability. If the ALJ had properly considered Dr. Mao's Domain Analysis—i.e. giving

---

[7] This is particularly relevant because the cyclical nature of Carter's condition may explain why Carter at times may not seem to have severe limitations from the perspective of a layperson. For example, the ALJ assumed that Carter's report of making good grades at one point in time was inconsistent with Dr. Mao's opinion that Carter had marked limitations. However, the alleged inconsistency disappears when taking into consideration Dr. Mao's special knowledge of the cyclical nature of Carter's condition because it would be expected that Carter would have periods of good performance in school followed by remission. This is precisely why it is so important to defer to the opinion of the treating physician who has a greater understanding of the nature of the condition at issue. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) ("[J]udges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. . . . Common sense can mislead; lay intuitions about medical phenomena are often wrong.") (citation omitted).

it controlling weight—she likely would have found Carter had marked limitations in two domains or an extreme limitation in one domain. Because it is conceivable that the ALJ would have reached a different disability determination had she properly considered Dr. Mao's Domain Analysis, her error was not harmless.

**CONCLUSION AND RECOMMENDATION**

For the reasons stated above, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Dkt. 10) be **GRANTED**, Defendant's Motion for Summary Judgment (Dkt. 11) be **DENIED**, and this case be **REMANDED** for reconsideration in accordance with this opinion and applicable law.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 22nd day of November, 2019.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE